Matthew F. Archbold (CA SBN 210369)
e-mail: matthew@yourlaborlawyers.com
David D. Deason (SBN 207733)
e-mail: david@yourlaborlawyers.com
DEASON & ARCHBOLD
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Telephone: (949) 794-9560

John Matthew Norton, Esq., Bar No. (CA SBN 158937)
Email: Matt@Matthew-Norton.com
MATTHEW NORTON & ASSOCIATES
444 West Ocean Blvd.,  Ste. 800
Long Beach, California 90802
Telephone: 562/624-2894

Attorneys for Individual and Representative Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACEY HERNANDEZ; and BRENDA MORALES,<br><br>               Plaintiffs,<br><br>     vs.<br><br>SEPHORA USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No.:  16-CV-05392-WHO<br><br>[FLSA CLASS ACTION UNDER 29 U.S.C. §216(b)]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>**DATE:**      **March 11, 2020**<br>**TIME:**      **2:00 p.m.**<br>**COURTROOM:  2** |

## TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................1

II.   STATEMENT OF FACTS…………..…...................................................1

III.   TERMS OF SETTLEMENT……………………………...............4

IV.   STANDARDS FOR APPROVAL OF SETTLEMENT………...............……7

V.   THE PROPOSED SETTLEMENT MEETS THE STANDARDS
     FOR APPROVAL………………………………………............................11

     A.   A Bona Fide Dispute Existed Between the Parties Regarding
          the Merits of Their Claims and Defenses...........................................11

     B.   The Settlement is the Result of Serious, Informed,
          Non-Collusive Negotiations and Compensates Opt-In
          Plaintiffs in a Fair and Reasonable Manner ……………….............…12

     C.   There was Sufficient Investigation and Discovery…………………14

     D.   Collective Action Counsel is Experienced…………...……………14

     E.   Notice to Opt-In Plaintiffs of Settlement...........................................15

     F.   There is no Current Opposition Within the Class………………..…17

VI.   SETTLEMENT ADMINISTRATOR.........................................................17

VII.   COLLECTIVE ACTION COUNSEL FEES AND LITIGATION
       COSTS AND NAMED PLAINTIFF SERVICE AWARDS........................18

       A.      Collective Action Counsel Fees and Litigation Costs........................18

       B.      Named Plaintiffs' Service Awards......................................................22

VIII.  CONCLUSION...............................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>CASES</u>

3

4
*Barrentine v. Arkansas-Best Freight System, Inc.,*
      (1981) 450 U.S. 728.............................................................…...7

5

6
*Beckman v. KeyBank, N.A.,*
      (S.D.N.Y. 2013)293 F.R.D. 467...................................................9

7

8
*Bonnette v. California Health & Welfare Agency,*
      (9th Cir. 1983) 704 F.2d 1465…………………………………….18

9

10
*Bozak v. FedEx Ground Package Sys., Inc.,*
      (D. Conn. July 31, 2014) No. 11 Civ. 738, 2014 WL 3778211.....................8

11

12
*Buccellato v. AT&T Operations, Inc.,*
      (N.D. Cal. June 30, 2011) No. 10 Civ. 00465, 2011 WL 3348055..............24

13

14
*Camacho v. Bridgeport Fin., Inc.,*
      (9th Cir. 2008) 523 F.3d 973....................................................20

15

16
*Campbell v. Advantage Sales & Mktg. LLC,*
      (S.D. Ind. Apr. 24, 2012) No. 09 Civ. 1430, 2012 WL 1424417.................8

17

18
*Casey v. City of Cabool,*
      (8th Cir. 1993) 12 F.3d 799....................................................18

19

20
*Cotton v. Hinton,*
      (5th Cir.1977) 559 F.2d 1326…………………………………….10

21

22
*Dunk v. Ford Motor Company,*
      (1996) 48 Cal.App.4th 1794……………………………....…….11

23

24
*Evon v. Law Offices of Sidney Mickell,*
      (9th Cir. 2012) 688 F.3d 1015....................................................19

25

26
*Flinn v. FMC Corporation,*
      (4th Cir. 1975) 528 F.2d 1169………………………………….10

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Flores v. City of San Gabriel,*
    (9th Cir. 2016) 824 F.3d 890........................................................................12

*Fowler v. Land Mgmt. Groupe, Inc.,*
    (4th Cir. 1992) 978 F.2d 158......................................................................12

*Garcia v. San Antonio Metro. Transit Auth.,*
    (1985) 469 U.S. 528…………....................................................................18

*Genesis Healthcare Corp. v. Symczyk,*
    (2013) 133 U.S. 66.....................................................................................9

*Glass v. UBS Fin. Servs., Inc.,*
    (N.D. Cal. Jan. 26, 2007) No. 06 Civ 4068, 2007 WL 221862....................24

*Gonzalez v. City of Maywood,*
    (9th Cir. 2013) 729 F.3d 1196..................................................................20

*Hensley v. Eckerhart,*
    (1983) 461 U.S. 424………….....................................................................22

*Hanlon vs. Chrysler Corporation,*
    (9th Cir. 1998) 150 F.3d 1011…………….................................................22

*In re General Motors Corp. Engine Interchange Litig.,*
    (7th Cir. 1979) 594 F.2d 1106……………...............................................11

*In re General Motors Corp. Pick-Up Truck Fuel Tank*
*Products Liab. Litig.,*
    (3rd Cir. 1995) 55 F.3d 768……………........................................11

*In re Mego Financial Corp. Securities Litigation,*
    (9th Cir. 2000) 213 F.3d 454..................................................................23

*Johnston v. Spacefone Corp.,*
    (11th Cir.1983) 706 F.2d 1178..................................................................19

*Khait v. Whirlpool Corp.,*
    (E.D.N.Y. Jan. 20, 2010)No. 06 Civ 6381, 2010 WL 2025106 ……....…..8

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
    (N.D. Ill. Sept. 16, 2016) No. 16 Civ. 3571, 2016 WL 5109196...................8

*Laffey v. Northwest Airlines, Inc.* ,
    (D.C. Cir. 1984) 746 F.2d 4……………………………………………..18

*Lee v. Timberland Co.*,
    (N.D. Cal. June 19, 2008) No. 07 Civ. 2367, 2008 WL 2492295……...……7

*Lobatz v. U.S. West Cellular of California, Inc.* ,
    (9th Cir. 2000) 222 F.3d 1142…………………………………………..20, 22

*Lynn's Food Stores, Inc. v. United States*,
    (11th Cir. 1982) 679 F.2d 1350…………………………………….....7, 9, 10

*McKeen—Chaplin v. Franklin Am.Mortg. Co.*,
    (N.D. Cal. Dec. 19, 2012) 2012 U.S. Dist. LEXIS 179635,
    2012 WL 6629608 ..........................................................................9

*McKenna v. Champion Int'l Corp.*,
    (8th Cir. 1984) 747 F.2d 1211, 1213, *abrogated on other grounds by*
    *Hoffmann-La Roche Inc. v. Sperling*, (1989) 493 U.S. 165..........................9

*Milstein v. Werner*,
    (S.D.N.Y.1972) 57 F.R.D. 515………………………………….…….10

*Nall v. Mal-Motels, Inc.*,
    (2013) 723 F.3d 1307……………………………………...........………10

*Odil v. Evans*,
    (M.D. Ga. 2005) 2005 WL 3591962.............................................19

*Otey v. CrowdFlower, Inc.*,
    (N.D. Cal. July 2, 2015) No. 12 Civ. 05524, 2015 WL 4076620 .....………7

*Perdue v. Kenny A.*,
    (2010) 130 S. Ct. 1662....................................................18, 19

*Root v. Ames Dep't Stores, Inc.*,
    (D.Mass. 1997) 989 F.Supp. 274 …...................................…..…........8

*Save Our Cumberland Mountains, Inc. v. Hodel,*
    (D.C. Cir. 1988) 857 F.2d 1516…………………………………………18

*Selk v. Pioneers Mem'l Healthcare Dist.,*
    (S.D. Cal. 2016) 159 F.Supp. 3d 1164 …....................................…..…….8

*Spencer v. Cent. Servs., LLC,*
    (D.Md. Jan. 13, 2012) 2012 U.S. Dist. LEXIS 4927...................................19

*Stevens v. Safeway, Inc.,*
    (C.D. Cal. Feb. 25, 2008) No. 05 Civ. 01988,
    2008 U.S. Dist. Lexis 17119 1465……………………………….............8

*Tallman v. CPS Sec. (USA), Inc.,*
    (D. Nev. 2014) 23 F. Supp. 3d 1249, 1267
    (*aff'd* (9th Cir. July 25, 2016) 2016 U.S. App. LEXIS 13521.....................20

*Trinh v. JPMorgan Chase & Co.,*
    (S.D. Cal. Mar. 3, 2009) 2009 U.S. Dist. LEXIS 16477,
    2009 WL 532556..........................................................................9

*United States v. Allegheny-Ludlum Industries, Inc.,*
    (5th Cir. 1975) 517 F.2d 826……………………………….....…...10

*Van Bronkhorst v. Safeco Corp.,*
    (9th Cir. 1976) 529 F.2d 943…………………………………….....…10

*Van Vranken v. Atlantic Richfield Co.,*
    (N.D.Cal.1995) 901 F.Supp. 294....................................................23

*Vedachalam v. Tata Consultancy Servs.,*
    (N.D. Cal. July 18, 2013) No. 06 Civ. 0963, 2013 WL 3929129................24

*Woods v. N.Y. Life Ins. Co.,*
    (7th Cir. 1982) 686 F.2d 578........................................................9

*Yue Zhou v. Wang's Rest.,*
    (N.D. Cal. Jan. 17, 2007) No. 05 Civ. 0279, 2007 WL 172308. ……....…….8

STATUTES

29 USC § 202……………………………………………………………..24

29 USC § 207(a)(1)………………………………………………………...1, 2

29 USC § 216(b)……...…………………………………………….1, 8, 18

29 USC § 255(a)………………………………………………….........12

29 USC § 260…………………………………………………….............13

OTHER

Manual for Complex Litigation (3rd Ed) (1995) §30.41…………………….…..11

Newberg on Class Actions, 3d Ed. (1992) §§ 11.25, 11.51………………………11

Newberg on Class Actions (4th Ed. 2001) section 11:38.......................................23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This is a proposed settlement of a collective action lawsuit under 29 U.S.C. 216(b) for unpaid overtime wages.  Through this lawsuit the Named Plaintiffs and Opt-In Plaintiffs are seeking to recover unpaid overtime wages for time spent in the application of makeup off the clock. Named Plaintiffs and Opt-In Plaintiffs were frequently required to work in excess of 40 hours a week without overtime compensation in violation of Fair Labor Standards Act, 29 U.S.C. §207(a)(1) ("FLSA").  The Opt-In group, including the Named Plaintiffs, Lacey Hernandez and Brenda Morales ("Named Plaintiffs"), is comprised of 465 current and former "females employed by Sephora as "Cashiers," "Cash Wrap Coordinators," "Personal Beauty Advisors," and/or "Product Consultants," who had worked at least 37.5 hours in a workweek during the relevant timeframe. (Archbold Dec., ¶5.)

### II.  STATEMENT OF FACTS

This is a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) brought by individual and representative Plaintiffs, on behalf of themselves, and all others similarly situated, against their former employer, Sephora USA., Inc. to recover unpaid overtime compensation for time spent applying makeup.

On September 20, 2016, Plaintiffs Lacey Hernandez and Brenda Morales filed their Complaint on behalf of themselves and a putative class/collective of non-exempt employees in certain job categories who worked in Sephora's retail stores across the United States, alleging causes of action for: (1) Willful violation of 29 U.S.C. § 207, (2) Violation of California Labor Code §§ 1198 and 510, (3) Violation of California Labor Code § 1197, (4) Violation of California Labor Code §§ 226.7 & 512, (5) Violation of California Labor Code §§ 201, 202, and 203, (6) Violation of California Labor Code §§ 201, 202, and 203.1, (7) Violation of California Labor Code § 226, (8) Failure to reimburse in violation of Labor Code

§ 2802, (9) Violation of California Business and Professions Code Section 17200 *et seq.* for unfair business practices, and (10) Violation of California Labor Code § 226 and § 1198.5.

On February 1, 2017, Defendant filed a Motion to Stay Plaintiffs' claims on the grounds that several earlier-filed wage and hour complaints were pending in San Francisco Superior Court that alleged similar or overlapping claims.   On February 2, 2017, Plaintiffs filed a Stipulation of Dismissal without prejudice of their second through tenth causes of action.   The causes of action that were subject to the dismissal are those which assert only claims under the California Labor Code. (Archbold Dec., ¶5.)  The Court signed the Order of Dismissal on February 6, 2017.   (Order Granting Stipulation of Dismissal, Dkt.#30.)  Plaintiffs re-filed their state claims in San Francisco Superior Court on February 9, 2017 (*Lacey Hernandez, et al. v. Sephora USA, Inc.* (CGC-17-557031)[1]).  (Archbold  Dec., ¶X.) On March 13, 2017, the Court denied Defendant's Motion to Stay Plaintiffs' remaining claim for unpaid overtime wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*   (Order Denying Motion to Stay, Dkt.#37.)

On October 20, 2017, Plaintiffs filed their Motion for Conditional Certification of Collective Action Under the FLSA based on a theory that Plaintiffs and similarly-situated employees were owed overtime wages in connection with time spent applying makeup. (Archbold  Dec., ¶6.)  On December 8, 2017, the Court granted Plaintiffs' motion in part, and denied it in part.  The Court certified the collective action, for notice purposes, of "females employed by Sephora as "Cashiers," "Cash Wrap Coordinators," "Personal Beauty Advisors," and/or "Product Consultants," who worked 40 or more hours, including any time spent

---

[1] Plaintiffs' state court case was subsequently coordinated with several other cases and is henceforth referred to collectively as the *Sephora Wage and Hour Cases*, California Judicial Council Coordination Proceeding No. CJC-16-004911. (Archbold  Dec., ¶5.)

applying makeup "off the clock," in a given week, from June 20, 2014 to present." (Exhibit C to Archbold Dec. - Order Granting Motion for Conditional Certification, Dkt.#59.)

After satisfying a "meet and confer" requirement set by the Court and agreeing on some aspects of the content and manner of the notice, the Parties could not completely agree on who should receive the notice and Opt-In forms. The Parties each submitted to the Court competing proposals regarding their disagreement. (Archbold Dec., ¶7.) Upon consideration of both proposals, the Court found it reasonable to limit the recipients of the notice to those who had worked at least 37.5 hours in a workweek during the relevant timeframe. Accordingly, the Court ordered that the notice and consent form was to be sent via U.S. Mail to current and former female Cashiers, Cash Wrap Coordinators, Personal Beauty Advisors, and/or Product Consultants who worked at Sephora in the three years prior to when the notice was sent, and who worked 37.5 hours or more in a workweek during that time period. (Exhibit D to Archbold Dec. - Order Regarding Manner and Content of Notice, Dkt.#63.)

The Notice and Opt-In Forms were mailed by CPT Group on February 2, 2018.  By the end of the Opt-In period, 460 individuals had joined the lawsuit (the Parties subsequently agreed that five late Opt-In Plaintiffs could be added to the collective class, for a total of 465 Opt-Ins).[2]  (Archbold Dec., ¶8.)

In February 2019, at Collective Action Counsel's request, Defendant delivered a spreadsheet setting forth the hours worked each week for each Opt-In Plaintiff.  On March 8, 2019, and based on the information provided, Collective Action Counsel delivered an initial settlement offer for the entire case.  After some

---

[2] A total of 470 Opt-In Consents were filed from March-May 2018 (Volumes 1-9), however, five of the Consents are duplicates: Denekia Bussell (#21 in Vol. 1, #12 in Vol. 2); Eshwa Shaiwany (#166 in Vol. 2, #14 in Vol. 4), Carla Soto (#34 and #38 in Vol. 3); Gisela Cuevas (#18 in Vol. 4, #14 in Vol. 6); and Kasha Thomas (#9 and #17 in Vol. 7).  Thus, there are 465 Opt-Ins total.

discussions between counsel, the Parties requested the assistance of a court-appointed mediator to supervise and assist with settlement negotiations. (Archbold Dec., ¶9.)

In analyzing the payroll data provided by Defendant, Collective Action Counsel discovered that a fraction of the total number of weeks that Opt-In Plaintiffs were employed at Sephora would qualify for federal overtime, even after adding in the allegedly unpaid hours worked.  There are approximately 40,000 total workweeks for Opt-In Plaintiffs from March, 2015 through December, 2018. Of those workweeks, approximately 4,000, or 10%, were workweeks in which 37.5 hours or more were worked. (Archbold Dec., ¶10.)   If Opt-In Plaintiffs had recovered 2.5 hours per week in unpaid overtime for the time spent in the application of makeup, the total overtime recovery under the FLSA would be approximately $115,000.00.  (Archbold Dec., ¶11.)  Named Plaintiffs and Opt-In Plaintiffs are recovering $100,000.00 under this settlement.

On June 3, 2019, the Court appointed Kristen W. Maloney as mediator.  On July 24, 2019, the Parties engaged in an all-day mediation session at the offices of Orrick, Herrington and Sutcliffe, LLP before mediator Kristen Maloney.  Although the Parties were unable to resolve the case during the mediation session, an agreement in principle as to the amount of the settlement was reached in the days that followed. (Archbold  Dec., ¶12.)

## III.   TERMS OF SETTLEMENT

The principal terms of the Stipulation of Settlement are as follows:

1.     Defendants shall pay a total Settlement Fund of $100,000.00 to settle the claims of Named Plaintiffs and Opt-In Plaintiffs.  (Exhibit B to Archbold Dec., Settlement Stipulation, ¶3.A.28 & ¶6.A.2.)

2.     Defendants shall further pay $155,000.00 to Collective Action Counsel, the Settlement Administrator and Named Plaintiffs, in statutory attorney's

////

fees and costs, Settlement Administration Costs and Named Plaintiff service awards. (Id. at ¶3.A.27 & ¶11.)

3.     Each Opt-In Plaintiff's Settlement Payment shall be calculated by Collective Action Counsel by adding approximately 1.75 hours of uncompensated time per week spent on the application of makeup to the weekly hours worked by each Opt-In Plaintiff as reflected in Defendant's records from March, 2015 through December, 2018;

(a)     After adding the 1.75 hours to the workweek, any resulting hours worked over forty (40) will be multiplied by the overtime rate of $18.00 per hour;

(b)     If the result of this calculation amounts to more than $100.00 in unpaid overtime, the Opt-In Plaintiff shall receive that amount under the settlement as their Settlement Payment. If the result is $100.00 or less, that Opt-In Plaintiff shall receive $100.00 as their Settlement Payment under the settlement. (Id. at ¶6.B.2.)

4.     Each Opt-In Plaintiff will receive a personalized Notice of Preliminary Approval of Class Action Settlement and Hearing on Final Approval of Settlement, advising them of the terms of the settlement and their rights and responsibilities. (Id. at ¶5; and Exhibit A to Archbold Dec. - Notice of Preliminary Approval of Class Action Settlement and Hearing on Final Approval of Settlement.)

5.     Each Opt-In Plaintiffs' Settlement Payment shall be distributed in one payment made up of two separate checks.  The first check will represent unpaid overtime compensation, for which federal and state withholdings shall be removed; and the second check will be for liquidated damages, for which a 1099 shall be issued. (Exhibit B to Archbold Dec., ¶6.B.2.)

6.     In addition to receiving their share of the Settlement for damages under the FLSA, Named Plaintiffs shall also receive $750.00 each as a service

award for their work and contributions as the Named Plaintiffs in this action in addition to an expanded waiver of claims.  (Id. at ¶9 & ¶11.)

7.     The Settlement Administration Costs associated with preparing and mailing the Notice of Preliminary Approval of Class Action Settlement and Hearing on Final Approval of Settlement in addition to the processing and distribution of all Settlement funds, total $8,700.00.  (Id. at ¶3.A.26 & 27.)

8.     Within thirty (30) days of the Court granting Preliminary Approval of the Settlement, Collective Action Counsel shall provide a calculation of each Opt-In Plaintiff's Settlement Payment to the Settlement Administrator and Defendant's Counsel, and Defendant will provide Class Data to the Settlement Administrator for purposes of carrying out the Settlement Administrator's responsibilities following Final Approval. (Id. at ¶4.C.4.)

9.     Within fifteen (15) business days of receiving Class Data, the Settlement Administrator will mail the Notice of Settlement to each Opt-In Plaintiff, and the Settlement Administrator shall verify in writing that the Notice of Settlement has been disseminated in accordance with the Court's Order of Preliminary Approval.  The Notice of Settlement shall be mailed to all Opt-In Plaintiffs via first class mail by the Settlement Administrator to their last known addresses, as indicated on their Opt-In Form filed with the Court.  If such mailed notices are returned as undeliverable, then the Settlement Administrator shall promptly have data searches conducted and shall promptly attempt to re-mail the Notice of Settlement to any new addresses disclosed by those searches.   Any Notice of Settlements returned as undeliverable after the first re-mail attempt, shall be re-mailed a second time. Any Notice of Settlements returned as undeliverable after the second re-mail attempt, shall not be re-mailed a third time.  (Id. at ¶4.C.5.)

10.     Within five (5) business days after the Effective Settlement Date, the Settlement Administrator shall specify the Employer Payroll Tax Liability that

/ / / /

must be paid in connection with the Settlement Payments and provide that calculation to Defendant's Counsel. (Id. at ¶4.C.7.)

11.    No later than fifteen (15) business days after the Effective Settlement Date, Defendant will deposit an amount into the QSF not to exceed the Maximum Settlement Amount ($255,000), consisting of the Settlement Fund ($100,000) plus any amounts approved by the Court for settlement administration costs, attorneys' fees and litigation expenses. At the same time, Defendant will deposit an additional amount into the QSF for the Employer Payroll Tax Liability. (Id. at ¶6.A.2.)

12.    Within twenty (20) business days after the Effective Settlement Date, the Settlement Administrator will make the required payments. (Id. at ¶4.C.9.)

## IV.    STANDARDS FOR APPROVAL OF SETTLEMENT

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." (*Barrentine v. Arkansas–Best Freight System, Inc*., (1981) 450 U.S. 728, 740.) An employee's right to fair payment "cannot be abridged by contract or otherwise waived." (*Otey v. CrowdFlower, Inc*., (N.D. Cal. July 2, 2015) No. 12 Civ. 05524, 2015 WL 4076620, at *3, citing *Barrentine*, 450 U.S. at 740.) Thus, FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court.  (*See Lynn's Food Stores, Inc. v. United States*, (11th Cir. 1982) 679 F.2d 1350, 1352–53.)

The Ninth Circuit has identified criteria courts must consider in determining whether to approve a FLSA settlement. (*Otey*, 2015 WL 6091741, at *4.) If a proposed collective action settlement "reflect[s] a reasonable compromise over contested issues," it should be approved. (*Lee v. The Timberland Co*., (N.D. Cal. June 19, 2008) No. 07 Civ. 2367, 2008 WL 2492295, at *2; William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). Approval of

an FLSA collective action settlement does not require the full Rule 23 settlement analysis, because an FLSA settlement "does not implicate the same due process concerns as does a Rule 23 settlement." (*See, e.g., Khait v. Whirlpool Corp*., (E.D.N.Y. Jan. 20, 2010) No. 06 Civ. 6381, 2010 WL 2025106, at *6; *but see Stevens v. Safeway Inc*., (C.D. Cal. Feb. 25, 2008) No. 05 Civ. 01988, 2008 U.S. Dist. LEXIS 17119, at *13  ("[FLSA] standard is similar to that used in evaluating settlements under Rule 23(e) of the Federal Rules of Civil Procedure.")

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." (*Khait*, 2010 WL 2025106, at *7.)

Often, a one-step approval process, rather than the two-step process for settlement approval of class actions, has been held appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23. (*See, e.g.*, *Yue Zhou v. Wang's Rest.*, (N.D. Cal. Jan. 17, 2007) No. 05 Civ. 0279, 2007 WL 172308, at *1-3  (endorsing one-step process for approval of FLSA collective action settlement).[3]  This is because collective actions under Section 216(b) of the FLSA ("Section 216(b)"), 29 U.S.C. § 216(b), do not implicate the same due process concerns as Rule 23 class actions. (*Selk v. Pioneers Mem'l Healthcare Dis*t., (S.D. Cal. 2016) 159 F. Supp. 3d 1164, 1172.) Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment, meaning that "the due process implications of a lack of formal

---

[3] *See also Root v. Ames Dep't Stores, Inc.*, (D. Mass. 1997) 989 F. Supp. 274, 274 (noting that FLSA-only settlement did not deprive those who elected not to opt in of any cause of action); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, (N.D. Ill. Sept. 16, 2016) No. 16 Civ. 3571, 2016 WL 5109196, at *1  (approving one-step settlement approval process for FLSA collective action);  *Bozak v. FedEx Ground Package Sys., Inc.*, (D. Conn. July 31, 2014) No. 11 Civ. 738, 2014 WL 3778211, at *2-3  (same); and *Campbell v. Advantage Sales & Mktg. LLC*, (S.D. Ind. Apr. 24, 2012) No. 09 Civ. 1430, 2012 WL 1424417, at *1-2 (same).

notification post-settlement are less worrisome." (*Id.*; *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*, (2013) 133 U.S. 66, 74 ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." (*McKenna v. Champion Int'l Corp.*, (8th Cir. 1984) 747 F.2d 1211, 1213, *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, (1989) 493 U.S. 165, 169-70.) Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. (*See, e.g.*, *Beckman v. KeyBank, N.A.*, (S.D.N.Y. 2013)293 F.R.D. 467, 476 ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, (7th Cir. 1982) 686 F.2d 578, 579-80 (discussing due process concerns present in Rule 23 class actions that are not present in collective actions brought under Section 216(b).)

Thus, the approval of settlements of FLSA claims is a separate, but related, analysis from the approval of settlements of class action claims. While § 216(b) authorizes collective actions, the FLSA does not expressly set forth criteria for courts to consider in determining whether an FLSA settlement should be approved, nor has the Ninth Circuit established any particular criteria. District courts within this circuit, however, have looked to the Eleventh Circuit's opinion in *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, (11th Cir. 1982) 679 F.2d 1350. (*See, e.g., McKeen—Chaplin v. Franklin Am.Mortg. Co.*, (N.D. Cal. Dec. 19, 2012) 2012 U.S. Dist. LEXIS 179635, 2012 WL 6629608, at *2; *Trinh v. JPMorgan Chase & Co.*, (S.D. Cal. Mar. 3, 2009) 2009 U.S. Dist. LEXIS 16477, 2009 WL 532556, at *1.)

////

Under *Lynn's Food*, settlement of FLSA claims may be allowed by "a stipulated judgment entered by a court which has determined that a *settlement* proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." (*Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Nall v. Mal-Motels, Inc.,* (2013) 723 F.3d at 1307 (reaffirming holding of *Lynn's Food* as to a district court's approval of stipulated judgment to settle FLSA claims).) "In those lawsuits, the parties may 'present to the district court a proposed *settlement*' and 'the district court may enter a stipulated judgment after scrutinizing the *settlement* for fairness.'" (*Nall,* 723 F.3d at 1306, quoting *Lynn's Food,* 679 F.2d at 1353.)

Despite the availability of the one-step process, the parties in this case have decided to pursue a more conservative two-step approach which proves the Opt-In Plaintiff with notice of the settlement, prior to a final approval hearing and judgment.

The trial court should not make a proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." (*Cotton v. Hinton,* (5th Cir.1977) 559 F.2d 1326, 1330, citing *Milstein v. Werner*, (S.D.N.Y.1972) 57 F.R.D. 515, 524-25.) When considering approval, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. (*Flinn v. FMC Corporation*, (4th Cir. 1975) 528 F.2d 1169.) Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. (*Id.* at 1173.)

In addition to examining the merits of a proposed settlement and ascertaining the views of counsel, other practical considerations may be taken into account. Litigants should be encouraged to determine their respective rights between themselves. (*United States v. Allegheny-Ludlum Industries, Inc.*, (5th Cir.

1975) 517 F.2d 826; citations omitted.) Particularly in class action suits, there is an overriding public interest in favor of settlement.  (*Van Bronkhorst v. Safeco Corp.*, (9th Cir. 1976) 529 F.2d 943, 950.)

In reviewing a request for preliminary approval of a class action settlement, the Court's task is to determine whether the proposed settlement is within the "range of reasonableness" that would warrant sending out a notice of the settlement.  (Newberg on Class Actions, 3d Ed. (1992) §11.25; Manual for Complex Litigation, §30.41.)

In addition to the existence of a bona fide dispute, a settlement is presumed to be fair when: (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; and (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.  (*In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig.*, (3rd Cir. 1995) 55 F.3d 768, 785; *In re General Motors Corp. Engine Interchange Litig.*, (7th Cir. 1979) 594 F.2d 1106, 1126; see also *Dunk v. Ford Motor Company*, (1996) 48 Cal.App.4th 1794, 1802.)  Where there is no extrinsic evidence of fraud or collusion, the Court should assume that settlement negotiations were conducted in good faith. (Newberg, supra, §11.51.)

## V.    THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR APPROVAL

### A.    A Bona Fide Dispute Existed Between the Parties Regarding the Merits of Their Claims and Defenses.

As the Court is aware, the proposed Settlement comes at the end of several years of enthusiastic litigation. During the litigation, the Parties have contested: (1) the scope of Named Plaintiffs' claims asserted in their Complaint;  (2) whether the action should be stayed pending the resolution of the *Sephora Wage and Hour Cases*; and (3) whether the FLSA class should be conditionally certified under Section 216(b). (Archbold Dec., 13.)  Moreover, Defendant anticipated the filing

of a Motion to Decertify the case, and contested the central question of whether the Named Plaintiffs and the Opt-In Plaintiffs had performed compensable off-the-clock work, how much of said work was performed, and whether payment for such work was barred by the *de minimis* doctrine, or could even be considered compensable time. (Archbold Dec., ¶14.)

Furthermore, Named Plaintiffs would have to show that Defendant's conduct was "willful" or lose the third year of damages under the statute of limitations. (29 U.S.C. § 255(a); *Flores v. City of San Gabriel,* (9th Cir. 2016) 824 F.3d 890.) Generally speaking, to establish willfulness for the purposes of extending the limitations period, the employee must prove by substantial evidence that the employer knew it was in violation of the Act or acted in reckless disregard as to whether it was in violation of the Act. (*Fowler v. Land Mgmt. Groupe, Inc.*, (4th Cir. 1992) 978 F.2d 158, 163.)

**B.     The Settlement is the Result of Serious, Informed, Non-Collusive Negotiations and Compensates Opt-In Plaintiffs in a Fair and Reasonable Manner**

This settlement was reached following more than three and years of litigation, including a Named Plaintiffs' Motion for Certification and extensive discovery both formal and informal.     Settlement discussions began in earnest during a mediation in July of 2019, before a highly respected mediator appointed by the Court with significant experience in wage and hour actions, and continued following a failed mediation.  Over the three years litigating this case, Collective Action Counsel approached Defense counsel on multiple occasions about engaging in settlement discussions.  Defendant's position was always that they were not interested, and had faith in their defenses. The settlement negotiations at mediation, and afterward, have been, at all times, adversarial and non-collusive in nature.  Even after the primary terms of settlement were agreed upon, the Parties engaged in an intense negotiation regarding the language of the settlement and its

supporting terms.  These negotiations lasted almost five (5) months.      (Archbold Dec., ¶15.)

To evaluate and negotiate settlement and take part in mediation, Collective Action Counsel prepared a time consuming and complicated damage analysis of all claims at issue in this case.  The proposed payment of $100,000.00 to the Opt-In Plaintiffs under the Settlement is fair and reasonable, as are the remaining portions of the settlement. The Settlement provides substantial relief to the Opt-In Plaintiffs and eliminates the inherent risk of continued litigation. Under the Settlement, each Opt-In Plaintiff's overtime recovery is based on adding approximately 1.75 hours per work week to each Opt-In Plaintiff's actual hours worked.  If Opt-In Plaintiffs had recovered 2.5 hours per week in unpaid overtime for the time spent in the application of makeup, as eluded to when the case was certified by the Court, the total overtime recovery would be approximately $115,000.00.[4]  (Archbold Dec., ¶11.)  Named Plaintiffs and Opt-In Plaintiffs are recovering $100,000.00 under this settlement.   This reflects only  a 13% reduction in potential overtime damages in this case.  (Id.)

Taking into account the Opt-In Plaintiffs' compensation structure, a detailed review of the payroll records of Sephora by Collective Action Counsel, the uncertainty of proving damages in an "off the books" case such as this, Collective Action Counsels' experience in litigating numerous FLSA overtime cases, Defendant's anticipated motion for decertification, the outstanding issue of liability and Defendant's other stated defenses, this settlement is well within the "range of reasonableness," and in fact compares very favorably.  (Archbold Dec. ¶16.)  Opt-In Plaintiffs should receive notice of this very favorable settlement.

////

_____

[4] Of course, should Named Plaintiffs have eventually prevailed on liability and damages, and Defendant failed in presenting a "good faith" defense to that liability, Opt-In Plaintiffs could recover liquidated damages in an amount equal to their overtime damages. (29 U.S.C. §260.)

### C.   There Was Sufficient Investigation and Discovery.

The parties have engaged in extensive formal and informal discovery. Named Plaintiffs propounded, and Defendants responded to multiple sets of written Interrogatories, and Requests for Production of Documents. Defendants produced thousands of pages of documents in response to Requests for Production of Documents, and the time records of each Opt-In Plaintiff. The Parties met and conferred on various discovery disputes and attempted to resolve such disputes with agreements to provide supplemental information. (Archbold Dec., ¶17.)

In addition to Defendant taking the deposition of Named Plaintiffs, Collective Action Counsel has interviewed numerous Opt-In Plaintiffs in this case regarding their estimates of unpaid overtime in this case and their relevant experiences at Sephora. (Archbold Dec., ¶18.) Further, Collective Action Counsel has conducted a detailed review of the payroll records for each Opt-In Plaintiff, and used them to create detailed spreadsheets designed to calculate each Opt-In Plaintiff's alleged damages and settlement. Collective Action Counsel used this information to determine the potential damages and eventually the Settlement Payment for each Opt-In Plaintiff. (Archbold Dec., ¶10 & ¶11.)

### D.   Collective Action Counsel Is Experienced.

Collective Action Counsel chosen by the Named Plaintiffs are well-qualified to represent a class of 460 members. The partners of Deason & Archbold have fully litigated numerous FLSA collective actions with hundreds of Opt-In Plaintiffs against major employers such as the Los Angeles Police Department, the City of Los Angeles, national workers compensation investigation firms and bail bonds companies, and the County of San Bernardino. (Archbold Dec. ¶ 20.)

Since its inception in 2003, the law firm of Deason & Archbold has been certified as Collective Action or Class Counsel in many wage and hour class actions. Excluding the instant action, the name and case number of several such matters are as follows: <u>Nordstrom Commission Cases</u>, Orange County Superior

Court - Judicial Council Coordination Proceeding No. 4419 (unpaid commission wages class action with approximately 65,000 class members); <u>Esparza v. Two Jinn, Inc., et al.</u>, USDC Case No. SACV09-00099 AG(RNBx) (unpaid overtime class action disputing application of the Retail Sales Commission exemption under the FLSA); <u>Maraventano/Balasanyan v. Nordstrom, Inc.</u>, Case No. 10cv2671 JM (WMc) (unpaid commission wages class action with approximately 45,000 class members); <u>Balsamo v. Orange Courier, Inc.</u>, OCSC Case No. 30-2010-00406066-CU-OE-CXC (unpaid minimum wage and meal period class action); <u>Flowers, *et al.* v. HSBC Auto Finance, Inc., *et al.*</u>, Case No. 07CV 2146 MMA ("off the books" overtime class action with Rule 23 state law and FLSA claims); <u>Rico v. Chick's Sporting Goods</u>, Case No. BC 297826 (retail overtime exemption class action); <u>Santa Ana v. Eurostar, Inc.</u>, Case No. BC310739; <u>Jue v. Crawford & Company</u>, Case No. CV03-7014 RGK (FMOx) (Surveillance investigator overtime class action); <u>Bernal v. International Reupholstery Corporation of America</u>, Case No. EDCV 04-01272VAP (SGLx) (national FLSA overtime class action); <u>Anchondo v. Facticon Incorporated</u>, Case No. SACV04-1453 (500+ putative class member national overtime class action under the FLSA); <u>Wonsch v. Facticon Incorporated</u>, Case No. 06CC00053 (Non-reimbursed employment related expenses and overtime class action; <u>Anchondo vs. Hospital Inventories Specialists, Inc.</u>, Case No. BC375250 (450+ class member overtime class action) Deason & Archbold also has four (4) currently pending class/collective actions, other than the instant case, that have not yet been certified. (Archbold Dec. ¶ 19.)

These facts demonstrate that Class Counsel is sufficiently experienced to represent the interests of the class.

**E.    Notice to Opt-In Plaintiffs of Settlement**

Each Opt-In Plaintiff will receive a personalized Notice of Preliminary Approval of Class Action Settlement and Hearing on Final Approval of Settlement,

////

advising them of the terms of the settlement and their rights and responsibilities. (Exhibit A to Archbold Dec., Proposed Notice; Exhibit B, §3.A.19.)

The Notice is the best notice practicable under the circumstances. The Notice fairly, plainly, accurately, and reasonably informs Opt-Ins of: (1) appropriate information about the nature of this action, the approximate recovery for each individual Opt-In Plaintiff, the identity of Collective Action Counsel, and the essential terms of the Settlement, including the plan of allocation; (2) appropriate information about the amounts being allocated to Named Plaintiffs as service awards and to Collective Action Counsel as attorneys' fees and costs; and (3) appropriate instructions as to how to obtain additional information regarding this action and the Settlement and the date of the Final Approval Hearing. (Exhibit A to Archbold Dec.)

The proposed plan for distributing the Notice of Settlement likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement. Under this plan, the Settlement Administrator will distribute the Notice to all Opt-In Plaintiffs by first-class mail to their last known addresses as stated in the Opt-In Forms returned by them when joined this action. (Archbold Dec., Exhibit B, §4.C. & §5.) If any Notice of Settlement is returned as undeliverable, then the Settlement Administrator shall promptly have data searches conducted and shall promptly attempt to re-mail the Notice of Settlement to any new addresses disclosed by those searches.  Any Notice of Settlements returned as undeliverable after the first re-mail attempt, shall be re-mailed a second time. Any Notice of Settlements returned as undeliverable after the second re-mail attempt, shall not be re-mailed a third time. (Archbold Dec., Exhibit B, §4.C.5.)

There is no additional method of distribution that would be reasonably likely to notify Opt-Ins who may not receive notice pursuant to the proposed distribution plan. In addition, the Settlement Administrator will take reasonable steps to locate Opt-Ins who do not promptly cash their Settlement Share checks.

**F.     The is no Current Opposition Within the Class**

To date, Collective Action Counsel is not aware of any Opt-In Plaintiff having expressed any opposition to the proposed settlement.  (Archbold Dec., ¶21.)

## VI.   SETTLEMENT ADMINISTRATOR

Collective Action Counsel has selected Phoenix Class Action Administration Solutions to act as the Settlement Administrator in this case. Collective Action Counsel obtained bids from approximately half a dozen settlement administrators.  After submitting a bid that was significantly more affordable than the others, Phoenix Class Action Administration Solutions provided references from multiple law firms that had used their services in the past.  Collective Action Counsel contacted four of these references which all provided enthusiastic endorsement.  This is the first time Collective Action Counsel has engaged Phoenix Class Action Administration Solutions.  The Settlement Administrator has agreed to perform the required services under the settlement for a total of $8,700.00. (Archbold Dec. ¶ 22.)

The Settlement Administrator's duties shall include formatting, printing and mailing the notices, including filling in individuating information about the amount each Opt-In Plaintiff is estimated to receive; weekly status reports; processing, reviewing, and issuing Settlement Payments as ordered by the Court; calculating tax withholdings and payroll taxes, making related payment to federal and state tax authorities, and issuing tax forms relating to payments made under the Settlement; establishing a QSF and disbursement of payments as provided by this Settlement Stipulation and as ordered by the Court; preparing any tax returns and any other filings required by any governmental taxing authority or agency; and any other costs and fees incurred and/or charged by the Settlement Administrator in connection with the execution of its duties under the Settlement Stipulation. (Archbold Dec., Exhibit B, §3.A.27.)

/ / / /

# VII. COLLECTIVE ACTION COUNSEL FEES AND LITIGATION COSTS, AND NAMED PLAINTIFF SERVICE AWARDS

## A. Collective Action Counsel Fees and Litigation Costs

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (29 U.S.C. § 216(b).)   The award is *mandatory*, not discretionary and applies to successful plaintiffs only. 29 USC § 216(b).   This mandatory attorney fees provision is designed to encourage private litigants to act as "private attorneys general" to enforce the FLSA standards. (See *Laffey v. Northwest Airlines, Inc.* (DC Cir. 1984) 746 F.2d 4, 11 (overruled on other grounds in *Save Our Cumberland Mountains, Inc. v. Hodel* (DC Cir. 1988) 857 F.2d 1516.)   Conversely, the FLSA does *not* authorize a fee award to the employer if the employer prevails.

This purpose is so important that a plaintiff is even entitled to an award of reasonable attorney fees that may substantially exceed the amount of damages recovered. (See *Bonnette v. California Health & Welfare Agency* (9th Cir. 1983) 704 F2d 1465, 1473 (disapproved on other grounds in *Garcia v. San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528, 105 S.Ct. 1005)—$100,000 in attorney fees awarded although only $18,455 damages recovered.)

Congress enacted fee-shifting statutes in order to ensure that federal rights are adequately enforced. Under a fee-shifting statute, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" action to vindicate the rights protected under the statute. (*Perdue v. Kenny A.*, (2010) 130 S. Ct. 1662, 1672.) "Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens." (*Casey v. City of Cabool*, (8th Cir. 1993) 12 F.3d 799, 805.) The Supreme Court has stated that there is a

"strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." (*Perdue v. Kenny A. ex rel. Winn,* (2010) 130 S. Ct. 1662.)

Moreover, "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." (*Spencer v. Cent. Servs., LLC*, (D.Md. Jan. 13, 2012) 2012 U.S. Dist. LEXIS 4927, *11.) The FLSA is a remedial statute that "'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" (*Johnston v. Spacefone Corp*., (11th Cir.1983) 706 F.2d 1178, 1182, quoting *Mitchell v. Lublin, McGaughy & Assocs*., (1959) 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243.)   Courts have long recognized that to achieve the remedial goal of the FLSA, attorneys' fees must be awarded. Awarding employees their attorneys' fees is necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation for legitimate claims." (*Odil v. Evans*, (M.D. Ga. 2005) 2005 WL 3591962, at *3.) The vast majority of FLSA claims deal with working class people who ordinarily would not have the financial resources to pay an attorney to pursue their overtime or minimum wage claims. This is especially true given that most FLSA claims do not involve significant amounts of money and often times the attorneys' fees are more than the FLSA claim itself.

Further, attorney's fee awards in FLSA cases are not limited to a percentage of the recovery, as such a limitation would unduly discourage attorneys from bringing matters to vindicate statutory rights under the FLSA. (*Evon v. Law Offices of Sidney Mickell*, (9th Cir. 2012) 688 F.3d 1015, 1033.) Rather, courts must use the "lodestar method" to assess attorneys' fees in FLSA suits. (*Camacho v.*

*Bridgeport Fin., Inc.*, (9th Cir. 2008) 523 F.3d 973; *Tallman v. CPS Sec. (USA), Inc.,* (D. Nev. 2014) 23 F. Supp. 3d 1249, 1267 (*aff'd* (9th Cir. July 25, 2016) 2016 U.S. App. LEXIS 13521.) Under the lodestar method, the court must make a two-part determination as to the reasonableness of the fee awards: 1) whether the number of hours expended on the litigation was reasonable; and 2) what is the reasonable hourly rate. (*Gonzalez v. City of Maywood*, (9th Cir. 2013) 729 F.3d 1196; *Tallman*, 23 F. Supp. 3d at 1249.)

Here, Plaintiff's Counsel's attorneys' fees are consistent with the above lodestar approach. The fees and costs incurred are reasonable given the complex legal theories presented in the case and the amount of resources expended to investigate, research, and analyze Plaintiff's claims.

Collective Action Counsel has expended a considerable amount of time and effort in litigating this matter of the course of the last three years, and presents herein summaries of the time they spent on the case and the fees applicable for the services they rendered.[5]   Defendants have produced, and Collective Action Counsel has reviewed, literally thousands of pages of documents on issues of class certification, liability and damages, including, but not limited to, Sephora's policies and procedures; memos; training manuals; personnel files; timesheets and payroll records; financial data; and SEC filings.   The parties have prepared and filed multiple briefs, and appeared on several motions and status conferences. Some of these proceedings required multiple appearances and supplemental briefing.  (Archbold Dec., ¶23.)

Further, Collective Action Counsel has conducted detailed interviews of multiple Opt-In Plaintiffs to evaluate their claims, and responded to regular inquiries from Opt-In Plaintiffs.   The parties have engaged in extensive settlement

---

[5] Summaries of the time spent on a case and the fees applicable for services rendered are sufficient for the Court to rely on when approving an award of separately negotiated attorney's fees and costs in a class action.  (*Lobatz v. U.S. West Cellular of California, Inc.,* (9th Cir.2000) 222 F.3d 1142, 1148-1149.)

discussions, before, during and after mediation, and an exhaustive evaluation of the merits of the case and the various settlement offers and counteroffers throughout the litigation.  (Archbold Dec., ¶24.)

The attorney fees negotiated in this litigation are more than reasonable based on the considerable time and expense already incurred by Collective Action Counsel in bringing this matter to conclusion; because it is expected that Collective Action Counsel will continue to expend numerous hours in finalizing the settlement after preliminary approval; and because Collective Action Counsel is highly experienced in the litigation of wage and hour class action matters. (Archbold Dec. ¶25.)  Collective Action Counsel has previously been approved in both federal and state court at the rate of $500.00 per hour for smaller, less complex wage and hour cases.  (Archbold Dec. ¶26.) Collective Action Counsel has incurred, over the course of the last three and one-half years, more than $190,000.00 in attorney fees, at the rate of $500.00 per hour, and approximately $17,425.00 in costs.  (Archbold Dec. ¶26 & ¶30; Norton Dec, ¶3-¶15, ¶26 & ¶27. ) Collective Action Counsel anticipates spending an additional 25-30 hours work sheepherding this settlement through conclusion for an additional $12,500.00 in fees. (Archbold Dec. ¶28.)   $500.00 per hour is consistent with rates for attorneys performing similar litigation in the Orange County/Los Angeles area of California. (Archbold Dec. ¶37; Norton Dec, ¶25.)  Further, $144,800.00 in attorney fees and costs agreed to as part of the Settlement in the context of a three year old class action litigation, is reasonable, or even below, fees incurred in similar situations. Notwithstanding, and in the interest of settlement, Collective Action Counsel has agreed to reduce its accumulated attorney's fees and accept $127,375.00 as full payment for attorney fees incurred, plus $17,425.00 in litigation costs as discussed above.

/ / / /

/ / / /

Moreover, courts have held that in the class action context the lodestar methodology of multiplying hours spent on the case by a reasonable hourly rate may then be increased by applying a multiplier to the attorney's fees actually incurred. (*Hensley v. Eckerhart*, (1983) 461 U.S. 424, 434; and *Hanlon v. Chrysler Corporation*, (9th Cir. 1998) 150 F.3d 1011, 1029.)  In this case, Collective Action Counsel has separately negotiated attorney's fees to be paid by Defendant in an amount that is only 63% of their lodestar methodology fees, without the application of any multiplier.

Barring some evidence of collusion, the Court is not required to examine Collective Action Counsel's contemporaneous time records, conduct and intensive inquiry, or enlist the services of a special master, when it approved awards of costs and attorney fees to Collective Action Counsel following settlement of class action, in which defendant agrees that fees and costs would be paid separately from class settlement.  (*Lobatz v. U.S. West Cellular of California, Inc.*, (9th Cir. 2000) 222 F.3 1142, 1148-1149.)   A summary of activities performed and fees accumulated, as has been provided above, coupled with some evidence that the fees sought are reasonable is sufficient.  (Id.)

For all of these reasons, the attorney fee amount negotiated between the parties is more than reasonable and should be approved by the Court.

**B.    Named Plaintiffs' Service Awards**

In exchange for an expanded waiver and release of claims and as compensation for their time, effort and desire to act as the Named Plaintiffs in this case, Defendant has also agreed to pay each Named Plaintiff $750.00. (Exhibit A to Archbold Dec., ¶8 & ¶11.)  The Named Plaintiffs have taken significant actions to protect the interests of Opt-In Plaintiffs, and those same Opt-In Plaintiffs have benefited considerably from those actions. Furthermore, the Named Plaintiff has expended considerable time and effort in pursuing the litigation. (Norton Dec., ¶13-¶17.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Monetary service awards, like the one provided for in this settlement, are routinely granted to class representatives in class action cases and it is appropriate to do so.  (*See, Newberg & Conte, Newberg on Class Actions* (4th Ed. 2001) section 11:38; *Van Vranken v. Atlantic Richfield Co.,* (N.D.Cal.1995) 901 F.Supp. 294, 299 (award of $20,000 each to two class representative in an antitrust case); *In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 463; *Armstrong v. Concentrix Corp.* 3:16-cv-05363 WHO - Order Approving FLSA Collective Action Settlement, December 6, 2018.)

Named Plaintiffs, through their diligence, have conferred a benefit on a large group of persons; they have rendered a public service by contributing to the vitality of federal labor law; they have proceeded on a collective basis without regard to their own interests, without receiving any benefit to themselves and at the expense of proceeding with an individual lawsuit that more than likely would have resulted in a more expedient resolution.  Plaintiff also assisted Collective Action Counsel with their ongoing investigation; participated in internal discovery; engaged in regular and ongoing communications with Collective Action Counsel; assisted in the preparation of written discovery; participated telephonically in an all-day mediation session; and reviewed the agreement in this case with admirable diligence.  (Norton Dec., ¶13-¶17.)

Moreover, when making the decision to bring this case, Named Plaintiffs were cognizant of the risk of future retaliation and possible negative impact on their future employability.  Named Plaintiffs believed that Defendant's policies were unfair so undertook the risks inherent in filing a collective action in order to right those wrongs on behalf of themselves and their fellow employees.  (Archbold Dec., ¶32.)  There is compelling argument that a modest enhancement award in the amount of $750.00 for each Named Plaintiff is more than appropriate in the instant case.

////

The service awards requested under the Settlement are consistent with – indeed, well below – the amount of awards given in comparable cases. (*See, e.g.*, *Armstrong v. Concentrix Corp.* 3:16-cv-05363 WHO - Order Approving FLSA Collective Action Settlement, December 6, 2018 ($7,500 to FLSA named Plaintiff); *Vedachalam v. Tata Consultancy Servs.*, (N.D. Cal. July 18, 2013) No. 06 Civ. 0963, 2013 WL 3929129, at *2 (Wilken, J.) ($35,000 and $25,000 to class representatives); *Buccellato v. AT&T Operations, Inc.*, (N.D. Cal. June 30, 2011) No. 10 Civ. 00465, 2011 WL 3348055, at *3 (Koh, J.) ($20,000 to lead plaintiff); *Glass v. UBS Fin. Servs., Inc.*, (N.D. Cal. Jan. 26, 2007) No. 06 Civ. 4068, 2007 WL 221862, at *16-17 (Chesney, J.) ($25,000 to each of four class representatives).

## VIII. CONCLUSION

For the foregoing reasons, Named Plaintiffs requests that the Court grant preliminary approval of the proposed settlement, preliminarily approve Collective Action Counsel's fees and costs, preliminarily approve Named Plaintiffs' service payments, appoint the Settlement Administrator, approve and authorize mailing of the Notice of Settlement, and set a date of June 24, 2020 for a final approval hearing.

DATED: February 5, 2020       DEASON & ARCHBOLD


By:   /s/ Matthew F. Archbold       
           Matthew F. Archbold
           Attorneys for Named
           Plaintiffs/Opt-In Plaintiffs